UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROBERT P. FORTMAN, JR., | |
| Plaintiff, | |
| v. | CAUSE NO. 1:24-CV-512-GSL-JEM |
| ALLEN COUNTY SHERIFF, | |
| Defendant. | |

OPINION AND ORDER

Robert P. Fortman, Jr., a prisoner without a lawyer, filed an amended complaint (ECF 19) and was granted "leave to proceed against the Allen County Sheriff in his official capacity for permanent injunctive relief to obtain constitutionally adequate medical care with regard to the administration of his prescription medication as required by the Fourteenth Amendment." ECF 20 at 9. When he initiated this case, he also filed a motion for preliminary injunctive relief asking the court to issue an order prohibiting the crushing of his medication. ECF 3. The court directed the Sheriff to respond to that motion "with supporting documentation and declarations from medical staff as necessary, addressing the status of the plaintiff's medical needs and the specific administration of any prescription medications he is currently receiving[.]" ECF 20 at 9–10. The Sheriff has filed his response (ECF 30), and although Fortman was granted additional time to reply (*see* ECF 33), he did not do so by the deadline. Therefore, the motion is ripe for adjudication.

In his amended complaint, Fortman alleges he takes at least nineteen pills a day for his medical aliments.[1] On November 20, 2024, he was advised by medical staff that one blood pressure pill had been found in his cell during a random cell search. As a result, all of Fortman's pills were ordered to be crushed going forward. Fortman claims the "cocktail" of crushed pills is hurting his stomach, causing violent bowel movements, and creating "mouth/kanker sores." ECF 19 at 2. He also believes the two seizure medications—Fycompa and gabapentin—prescribed for his "violent and dangerous" epileptic seizures are wearing off too soon, causing him to experience pre-seizure migraines and auras. *Id*. at 3. He asserts the manufacturers' directions for several of his medications indicate they are not to be crushed and/or opened. He also claims nurses at the jail told him his psychological and seizure medications shouldn't be crushed due to certain coatings on them.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[1] Fortman lists the following medications: "Fycompa, gabapentin, propranolol, meloxicam, methocarbamol, prazosin, Wellbutrin, and a multivitamin." ECF 19 at 3. He lists his medical ailments as "a history of stroke, back surgery from a motor vehicle accident, seizures, neurological issues from stroke, psychological issues, and more." *Id*. at 4.

As to the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[2] On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate or providing him with additional medications—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy

---

[2] The Seventh Circuit has recognized the first step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

3

the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Fortman provides the same basic information that is in his complaint as described above. He again asks for a court order prohibiting the crushing of his medication, "[e]specially all mental health medications." *Id*. ECF 3 at 2. The Sheriff has submitted medical records and an affidavit from Caroline Koester, who is employed by Quality Correctional Care, LLC (QCC) as the Director of Pharmacy. *See* ECFs 30-1 through 30-5. Ms. Koester attests she is licensed by the Indiana State Board of Pharmacy and oversees pharmacy operations at county jails in Indiana, including the Allen County Jail, where she has "extensive contact with medical staff." ECF 30-1 at 1. She uses a database service called "UpToDate (Lexidrug)," which provides "information concerning all medications administered by [QCC] and is used to assess medication regimens for drug interactions, allergies, and other issues." *Id*. at 2. Ms. Koester attests as of February 4, 2025, Fortman has active prescriptions for multiple medications,[3] which are provided to him on a consistent schedule. *Id*.; *see also* ECF 30-2 (medication list) & ECF 30-3 (distribution reports). She further attests that his medications are reviewed regularly, that per UpToDate (Lexidrug) there are "no prohibitions or warnings against crushing any of his medications before

---

[3] Those medications include buproprion, gabapentin, methocarbamol, perampanel, prazosin, propranolol, and a multivitamin. ECF 30-1 at 2.

4

consumption,"[4] and that Fortman's medications are "not extended-release medications and it is appropriate to administer them in a crushed form." *Id*. at 3. Ms. Koester notes the crush order is in effect due to Fortman's history of hoarding medications which "compromises the safety and security of the Allen County Jail." *Id*.; *see also* ECF 30-5 at 3, 12-14, 16-17 (medical chart notes from July 2019 to January 2025).

Sick call notes from December 3, 2024, indicate Fortman claimed he was experiencing stomach pain from the crushed pills, but nursing staff made the decision to keep the crush order in place due to his history of hoarding pills. ECF 30-4 at 5–6. Fortman was assessed again by medical staff on January 14, 2025, and he was advised it was likely the meloxicam, a nonsteroidal anti-inflammatory drug (NSAID), causing the stomach pain. *Id*. at 1–4. He was given the option to either discontinue the meloxicam, receive a proton pump inhibitor (omeprazole), or receive an H-2 blocker (famotidine/Pepcid). *Id*. Fortman initially chose to accept the Pepcid, and it was administered for eight days; however, it was discontinued after repeated refusals. *Id*.; *see also* ECF 30-3 at 1 (distribution reports).[5] Medical chart notes from January 28, 2025, indicate Fortman told nursing staff, "I feel alright without the anti inflammatory and am doing alright. My stomach doesn't hurt so I don't need those meds anymore." ECF

---

[4] UpToDate (Lexidrug) will "advise users not to crush medications when doing so can lead to severe side-effects or has the potential to hinder safety or efficacy of the medication." ECF 30-1 at 3.

[5] Sucralfate was also prescribed as a GI protectant, but it too was discontinued due to repeated refusals. As a result, a written order for no NSAIDs was obtained on January 21, 2025, "due to reported symptoms and no GI protection." *See* ECF 30-5 at 1 (medical chart notes); *see also* ECF 30-3 at 2 (distribution reports).

30-5 at 1. Ms. Koester attests that QCC staff will "continue to monitor Mr. Fortman's medication regimen." ECF 30-1 at 4.

The Fourteenth Amendment requires that pretrial detainees be provided with constitutionally adequate medical care for serious medical needs, so jail staff must take "reasonable available measures" to address a "risk of serious harm" to an inmate's health or safety. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Whether a defendant is providing reasonable care is determined by a purely objective standard. *Id.* First, the plaintiff must allege the defendant performed a volitional act or made a deliberate choice not to act. *Id.* at 570. "This framing asks strictly whether the defendant intended to commit the physical act that caused the alleged injury." *Id.* "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (quotation marks omitted). Then, the reasonableness of that action or inaction is assessed based on whether "reasonable [individuals] under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman*, 108 F.4th at 572 (emphasis omitted). Whether the defendant actually knew that his action or inaction would cause harm is irrelevant under the Fourteenth Amendment. *Id.* "[W]hen evaluating whether challenged conduct is objectively unreasonable, courts must focus on the totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020) (quotation marks omitted).

Based on the record before the court, Fortman hasn't made a clear showing that he is entitled to a preliminary injunction. At issue is whether he is *currently* receiving

6

constitutionally inadequate medical care such that he will be irreparably harmed if not granted injunctive relief while this case is pending. Although Fortman disagrees with the decision to crush his medication, he hasn't shown his medication regimen is objectively unreasonable considering the circumstances described above. *See Univ. of S. Ind.*, 43 F.4th at 792 (when ruling on a motion for preliminary injunction, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation"). The Sheriff has presented the following evidence via medical records and affiant testimony: (1) Fortman's medications are reviewed and monitored frequently by both nursing and pharmaceutical staff; (2) there are no prohibitions or warnings against crushing his specific medications per the widely-used online drug database; (3) the crush order remains in place due to Fortman's history of hoarding medication; (4) steps have been taken to address his stomach pain; and (5) medical staff will continue to monitor his condition. Fortman hasn't disputed any of this evidence via reply. To the extent he disagrees with the decision to crush his medication, that isn't enough to warrant granting preliminary injunctive relief. *See e.g., Pulera v. Sarzant*, 966 F.3d 540, 552 (7th Cir. 2020) (finding doctor's decision to withhold medication based on inmate's alleged abuse of them was objectively reasonable based on the information available at the time); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (inmates are "not entitled to demand specific care" and the court must generally defer to medical professionals unless evidence shows blatant incompetence); *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims, however, where a prisoner's claim is based on a preference for one medication over another unless there

7

is evidence of a *substantial* departure from acceptable professional judgment.") (emphasis in original)); *Univ. of S. Ind.*, 43 F.4th at 791 (plaintiff cannot be given the benefit of unsupported inferences at this stage).

For these reasons, the court DENIES the motion for preliminary injunctive relief (ECF 3).

SO ORDERED on February 28, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT